*Decisions will be entered under Rule 50.*

THE SEAGRAVE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 68787. Filed May 10, 1962.

*Allen I. Pretzman, Esq.*, for the petitioner.
*John J. Larkin, Esq.*, for the respondent.

MULRONEY, *Judge:* The respondent determined a deficiency in petitioner's income tax for the taxable year 1955 in the amount of $36,985.90. All issues have been settled with the exception of one issue as to whether interest accrued to petitioner in the amount of $1,968.28 on obligations issued by six volunteer fire departments is exempt from gross income under section 103(a)(1), I.R.C. 1954.[1]

### FINDINGS OF FACT.

Some of the facts have been stipulated and are found accordingly.

Petitioner is a corporation with its principal office at 2000 South High Street, Columbus, Ohio. Its return for the year 1955 was filed with the district director of internal revenue at Columbus, Ohio.

Petitioner is engaged in the manufacture and sale of commercial firefighting equipment. During the year 1955 interest accrued on obligations in the form of interest-bearing notes issued to petitioner by the following volunteer fire departments for the purchase of firefighting equipment:

West Branch Hose Company, Renovo, Pennsylvania_____ $62. 55
Chesapeake Volunteer Fire Department, Chesapeake, West Virginia_____ 244. 00
East Rainelle Volunteer Fire Department, East Rainelle, West Virginia__ 80. 50
Seaford Volunteer Fire Department, Seaford, Delaware_____ 890. 93
Hooper's Island Volunteer Fire Department, Hooper's Island, Maryland__ 189. 24
Fairdale Volunteer Fire Department, Fairdale, Kentucky_____ 501. 06

Petitioner excluded the above amounts of interest from its gross income as interest received from obligations issued by political subdivisions of States pursuant to section 103(a)(1).

The Hooper's Island Volunteer Fire Department was incorporated on April 21, 1953, as a private, nonprofit corporation pursuant to the general incorporation laws of Maryland. During the year 1955, it was engaged in furnishing firefighting aid to the community of Hooper's Island, Maryland. Its membership during 1955 varied from 80 to 100 men. In order to become a member of the department, an application must be filed. The applicant is voted upon by secret ballot at a regular meeting of the department's members. Most of the funds for operation of the Hooper's Island Volunteer Fire Department come from social functions. It did receive $1,000 yearly from Dorchester County, Maryland, but no other financial help from any other governmental agency.

The East Rainelle Volunteer Fire Department Inc. was incorporated on March 11, 1953, as a private, nonprofit corporation pursuant to the general incorporation laws of the State of West Virginia. It was

---

[1] All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

engaged in furnishing firefighting aid to the community of East Rainelle, West Virginia. Its membership consists of approximately 25 active members. The East Rainelle Volunteer Fire Department also has approximately 500 to 600 associate members. In order to become a regular member of the department an application must be filed. This application must be approved by vote of a majority of the regular members of the department. A $2 fee is charged with each application. The associate membership is on the basis of a membership card costing $4 per year. In addition to funds obtained from associate members, other funds for operation are raised from social functions sponsored by the department, such as carnivals, bake sales, and dances. Members of the community served by the East Rainelle Volunteer Fire Department who are nonmembers are charged $100 per call. The department operates independently and without any exercise of control by either the municipality, county, or State involved.

The Chesapeake Volunteer Fire Department Incorporated was incorporated on December 12, 1952, as a private, nonprofit corporation pursuant to the general incorporation laws of West Virginia. During the year 1955 it was engaged in furnishing firefighting aid to the community of Chesapeake, West Virginia. Its membership consisted of approximately 25 members. Membership is elective by two-thirds or three-fourths majority of the membership. Most of the operating funds are received from solicitation of members of the community and proceeds received from social affairs sponsored by the department. With the exception of gasoline expenses and minor equipment expenses received from the City of Chesapeake, the department received no financial assistance from the city, county, or State governments. The department operates independently and without any exercise of control by either the city, county, or State involved.

West Branch Hose Company No. 2 was incorporated in February 1945, as a private, nonprofit corporation pursuant to the general incorporation laws of the Commonwealth of Pennsylvania. It was engaged in furnishing firefighting aid to the borough of Renova, Pennsylvania. Its membership consists of between 35 to 50 active members. In order to become a regular member of the department an application must be filed. The applicant serves a period of apprenticeship following which period he is accepted or rejected by secret ballot at a regular meeting of members of the department. Two dissenting votes are sufficient for rejection. Regular members are charged a fee of $1 per year. Operating funds were obtained from solicitations from members of the community, operation of carnivals, bingo games, lottery cards, and sales of liquor and beer through operation of a men's club. The department operates independently and without exercise of control by either the borough, county, or State involved.

The Seaford Volunteer Fire Department was incorporated on October 24, 1940, as a private, nonprofit corporation pursuant to the general incorporation laws of the State of Delaware. It was engaged in furnishing firefighting aid to Seaford, Delaware, and surrounding counties. Its membership consists of 40 active members and 20 active reserve members. The department is run by an executive board consisting of eight elected members. Membership must be by application and first approved by the executive board. The application is then read at a regularly scheduled meeting and approved by the department's members. The prospective member is accepted for a probation period of 6 months. Upon completion of that period, final membership is voted upon by secret ballot of the total members. An applicant must pay a $2 fee at the time of application with no further charge being made by the department for membership.

The Fairdale Volunteer Fire Department, Inc., was incorporated on September 8, 1952, as a nonprofit corporation under the general incorporation laws of the Commonwealth of Kentucky. Operating funds were obtained principally by voluntary contributions or voluntary membership. Aid in the amount of $1,800 a year was received from the fiscal court of Jefferson County.

Respondent determined the interest income accrued on the obligations of the above volunteer fire companies was not tax exempt.

#### OPINION.

Section 103(a)(1), I.R.C. 1954, provides in part that "Gross income does not include interest on * * * the obligations of a State * * * or any political subdivision of any" State. The sole question here is whether the volunteer fire companies are political subdivisions of the States where they are located.

We hold they are not. They may be political, in the sense that "political" is synonymous with "public," [2] but they are not subdivisions of the State. It may be conceded the volunteer fire companies perform a public function in the sense that they perform the same function that is generally carried on by municipal fire departments. But the volunteer fire companies here involved are not in any sense subdivisions of the States where they are located. They were not created by any special statutes and they received no delegation of any part of the State's power. It is not enough that they perform a public service. They cannot be called a subdivision of the State unless there has been a delegation to them of some functions of local government.

[2] See *Commissioner* v. *Shamberg's Estate*, 144 F. 2d 998, affirming 3 T.C. 131, where an attorney general's opinion is quoted, stating: "The words 'political' and 'public' are synonymous in this connection."

The volunteer fire companies were all formed under general incorporation laws of the various States. They do not render services prescribed by law. They perform services prescribed by their constitutions and bylaws as do any other corporations created under the general incorporation laws of the State. The fact that they were created by virtue of and in compliance with general incorporation laws does not mean they are clothed with any State power.

The relations between the fire companies and the municipalities they serve are purely voluntary. No power of the State could compel them to render any services and the State, or its political subdivision, the municipality, could not be compelled to accept their services. They are free associations created by the voluntary acts of their incorporators, and not by any legislative action. They can be dissolved at the will of the corporate members.

Petitioner refers us to State statutes providing city, State, and county funds may or shall be contributed to support volunteer fire companies; State statutes granting exemptions from State property and excise taxes; and State statutes providing for instruction of volunteer firemen at State expense. Such statutes do not add up to any delegation of any part of State authority. All that such statutes do is recognize such companies perform a public function and should be encouraged by grants of financial aid and State tax exemptions.

Petitioner cites *Commissioner* v. *Shamberg's Estate*, 144 F. 2d 998, affirming 3 T.C. 131, and *Commissioner* v. *White's Estate*, 144 F. 2d 1019, affirming 3 T.C. 156. In *Shamberg* it was held Port of New York Authority was a political subdivision of New York and New Jersey and in *White* it was held the Triborough Bridge Authority was a political subdivision of New York. The cases are not in point. In both instances the authorities were created by direct legislative Acts and they were invested with some sovereign functions.

We hold for respondent on the issue presented. We understand the parties agree the interest accrued from the six volunteer fire companies in 1955 was in the total sum of $1,968.28. Such interest income was includible in petitioner's income for that year.

*Decision will be entered under Rule 50.*